# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIE L. ADDISON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-1563-CJB-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

Plaintiff, Willie L. Addison ("Addison"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(c). Although Addison is a minor, this complaint was filed in his own name.

Addison's counsel represented that any further pursuit of the litigation was frivolous. Rec. doc. 11. Her motion to withdraw was granted. Before issuing a briefing order, the record was reviewed. For the reasons described below, it is recommended that Addison's claim be dismissed with prejudice.

**A.      Background**.

On August 23, 2004, Addison's mother, Linda Addison, filed an application for SSI on his behalf. Addison was eight years old. Ms. Addison reported that he suffered from Attention Deficit Disorder. The application was denied. There was a hearing before an Administrative Law Judge ("ALJ"). On July 25, 2007, the ALJ determined that Addison was not disabled. R. 33. The ALJ

considered the six domains of function and found that Addison had: (1) a marked limitation in acquiring and using information based on his school records which revealed deficits in reading and comprehension; (2) a less than marked limitation in attending and completing tasks; (3) no limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) a less than a marked limitation in health and physical well-being. R. 21-33. On October 23, 2007, Addison sought review with the Appeals Council and argued that he had marked limitations in the domains of attending and completing tasks and interacting and relating with others. R. 6-12. On February 13, 2008, the Appeals Council denied the request for review. R. 3-5.

On April 10, 2008, Addison filed a complaint in federal court. Rec. doc. 1. On August 13, 2008, the Commissioner moved to remand the case, pursuant to sentence six of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), because a significant portion of the November 6, 2006 hearing before the ALJ was inaudible. Rec. doc. 9. The motion was granted. Rec. doc. 10.

On April 7, 2009, a different ALJ conducted a *de novo* hearing. Addison and his mother testified. R. 262-85. On October 15, 2009, the ALJ found that Addison was not disabled. R. 248-60.

On March 17, 2010, Monica Ferraro filed a motion to withdraw as counsel of record for the Addison. She contended that because the second ALJ properly addressed all the issues in Addison's most recent hearing and nonetheless returned another unfavorable decision, any further pursuit of the litigation was frivolous. She reported that: (1) she represented Addison through all phases of adjudication; and (2) Addison was notified that no further appeal would be filed. Rec. doc. 11. The motion to withdraw was served on Addison. No opposition was filed. On March 18, 2010, the

2

Commissioner filed a motion to reopen the case. Rec. doc. 13.

It was recommended that the motion to withdraw and the motion to reopen be granted. The recommendation stated that, "the record of the administrative proceedings will be reviewed before a scheduling order is issued." Rec. doc. 16. The District Judge granted the two motions and the Commissioner filed the record. Rec. docs. 17 and 19.

**B.      Applicable Law.**

The issue is whether Addison is "disabled" under the definition found in 42 U.S.C. § 1382c(a)(3)(C)(i) which states:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Id. The regulations thereunder mandate the following three step analysis:

> We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a).

**C.      Testimony at April 7, 2009 Hearing.**

Addison was present with his mother and their attorney. In the first part, the ALJ and the attorney questioned Addison outside of the presence of his mother. In the second part, the ALJ and

3

the attorney questioned Ms. Addison.

Addison testified that at the time of the hearing he was thirteen. R. 266. He was in the fifth grade. R. 267. He liked his teachers. R. 267-68. When asked how it was going in the fifth grade, he said, "[g]ood." R. 267. He could focus and pay attention. R. 273. He described his grades as good and bad. R. 273. He was doing well in reading. R. 274. He got along with other kids at school and his brother and sister. R. 274. He admitted that sometimes he got in trouble for yelling at his sister and brother or fighting. R. 270. He denied fighting at school. R. 271. Someone tried to fight him, but he walked away. R. 272. The dispute concerned a school yard game like "dodge ball." R. 272-273.

He stopped taking medication about a year before the hearing. R. 268.

Addison liked rap music. R. 268. He listened to church music sometimes. R. 269. He played video games. R. 269. He liked to skateboard and play football. R. 269. He was a Saints fan. R. 269. He looked at MTV. R. 271.

Ms. Addison knew her son's teachers in the fifth grade. R. 275-76. She said he was in a resources class which she considered special education. R. 276. She believed that he did better before he got into the resources classes. R. 284.

Addison was on medication for his ADHD, but stopped. Ms. Addison reported that he had difficulty breathing and other side effects when he was on the medication. R. 277 and 283. Before he got on the medication, his behavior was not too bad. R. 284.

When she filed for disability for Addison, he had a learning disability. He was progressing, but he was way below his grade. R. 277. The school reported that he needed to do more homework but he did not bring any home. R. 278. She had to search his papers to find his work and report

4

card. R. 278. He failed the first, third and fourth grades. R. 278. He went to summer school. R. 279. Ms. Addison believed that the school was letting him slide through without repeating a grade. R. 279.

Ms. Addison reported that her son's attention span had improved. R. 281. He played a lot and he worried about his image. R. 279. He had trouble with his temper. R. 279. He needed supervision if he played outside. R. 279-80. He got along with his sister and brother. R. 280. He was not in any trouble at school. R. 280. He worked hard. He cleaned up at the house. If Ms. Addison asked him to do something, he would do it. R. 282.

**D.     Medical and school records**.[1]

On February 19, 2004, when Addison was seven, there was a psychiatric evaluation at the KidKare Multipractice Clinic ("KidKare"). It was conducted by S. Roa Chalassani, M.D. Ms. Addison reported that Addison was disruptive. The diagnosis was attention deficit hyperactivity disorder, combined type, and opposition defiant disorder. Adderall was prescribed. The dosage could be increased and if necessary Adderall XR could be prescribed. Therapy was recommended in response to the report of fighting with siblings. R. 124-26. On December 17, 2004, Adderall XR was prescribed. R. 190. On January 20, 2005, the prescription was changed to Focalin. R. 189.

On November 11, 2004, there was a psychological evaluation by Brian G. Murphy, Ph.D. Addison was in the second grade. The sole purpose of the evaluation was academic achievement testing. It was noted that in some respects he performed admirably and in other respects his rate of learning seemed impaired. R. 128-30.

The last treatment records from KidKare were for January 27, 2006 through October 23,

---

[1] This is not a complete summary of all of the medical and school records for Addison.

5

2006. R. 212-27. On January 27, 2006, he was doing well and his grades were good. R. 227. On March 1, 2006, he was doing well in school. R. 225. On May 1, 2006, he was going to summer school. He was suspended from school for hitting a girl on the bus. The record noted that he may need an adjustment in his medication. R. 222. As of July 10, 2006, he was taking Dexidrine for ADHD. Addison complained about a loss of appetite, inability to sleep and headaches. R. 221. On September 6, 2006, he was failing in school. His medication was not working. An appointment was made with Dr. Celestine. R. 219. On September 14, 2006, Dr. Celestine adjusted his medication. R. 218. On October 5, 2006, he reported that his school work was hard. He had D's and F's. His appetite was good and he was sleeping. R. 216. On October 23, 2006, his appetite was good and he was sleeping. R. 213.

The Commissioner sought further records from KidKare on December 10, 2008 and January 23, 2009, but no records were received. R. 333 and 337.

On February 11, 2009, Catherine Legard completed a teacher questionnaire. She reported that she had known Addison since August, 2008. She worked with him all day and in all subjects. For the domain of acquiring and using information, she reported that he had an obvious problem in three functions, including reading and comprehending written material. In no area did she indicate that he had a serious or very serious problem. She reported that he received extra help because he was "resource student." Her response on attending and completing tasks was similar. For the remaining domains (interacting and relating with others; moving about and manipulating objects; and caring for himself), she found no problem with any of the functions. R. 351-58.

**E. <u>Analysis</u>.**

When Addison filed his complaint on August 27, 2008, he objected to the findings of the original ALJ at the third step of the evaluation. At step three the Commissioner determines whether the child's impairments meet, medically equal, or functionally equal the listing and duration requirements. 20 C.F.R. § 416.924(d)(1). Because Addison was under age eighteen at the time of the ALJ's decision, disability is established if there is a marked limitation in two domains or an extreme limitation in one domain. <u>Id</u>. at § 416.926a. The first ALJ found that Addison had a marked limitation in only one domain; that is, acquiring and using information. R. 29. Before the Appeals Council, Addison contended that the first ALJ erred in not find that he had marked limitations in attending and completing tasks and in interacting and relating with others. R. 8-11.

On remand, the second ALJ reached the same conclusion as the first ALJ and found that Addison had a marked limitation in acquiring and using information. R. 255. The second ALJ found, however, that he had a less than marked limitation in interacting and relating with others (R. 257) and no limitation in attending and completing tasks (R. 256).

The second ALJ noted that Addison was diagnosed with ADHD, medication was prescribed, and there were adjustments to the medication. At the April 7, 2009, hearing, Addison and his mother reported that he stopped taking the medication more than a year before. Although the Commissioner sought additional records from KidKare there was no record of treatment after October, 2006. The ALJ stated:

> The preponderance of the evidence shows that the parent has sought medical treatment for the claimant, kept regular follow-up appointments (at least through October 2006) but failed to administer the prescribed medication resulting in the exacerbation of the claimant's condition from time to time. Furthermore, the

7

claimant and his mother testified (April 7, 2009) that although the claimant has not been on any medication for over one year he has shown improvement at school and home. He has not gotten into trouble at school (had some altercations . . .) but walked away from a fight this school year; his attention span has improved with help from his resource teacher; mother admitted that he does not have to be watched "as closely;" he completes household chores; and he does as she asks him to do.

R. 253. The medical records and the testimony at the April 7, 2009 hearing provide substantial evidence for this statement.[2]

The ALJ found no limitation in attending and completing tasks. R. 255-56. After describing the rules and regulations applicable to this domain, the ALJ reported that Addison testified that he attended regular classes, he was able to focus and pay attention, and he was passing all subjects. The ALJ commented that Addison's teacher, Ms. Legard "noted primarily slight problems to no problems in the area of attending and completing tasks," and "[h]er only concern was his need to be redirected in order to stay on task. . . ." R. 256. Based on the testimony at the April 7, 2009 hearing and Ms. Legard's response to the teacher questionnaire (R. 351-54), there is substantial evidence for the ALJ's finding of no limitation for the domain of attending and completing tasks.

The ALJ found a less than marked limitation for interacting and relating with others. R. 256-57. The ALJ described the rules and regulations applicable to this domain. The ALJ referred to Addison's testimony that he got along with his sister and brother but there was some yelling and fighting with them. The ALJ noted that Ms. Legard observed no problem in any of the areas included within the domain of interacting and relating to others. Ms. Legard's response (R. 354)

---

[2] Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

8

and Addison's testimony at the April 7, 2009 hearing provide substantial evidence for the ALJ's finding of a less than marked limitation in the domain of interacting and relating with others.

**F.    Conclusion**.

When Addison's counsel sought leave to withdraw, she reported that because the ALJ properly addressed all the issues in Addison's most recent hearing and nonetheless returned another unfavorable decision, any further pursuit of the litigation was frivolous.  Rec. doc. 11.  The record demonstrates that there is substantial evidence to support the final decision of the Commissioner as trier of fact and that the Commissioner applied the appropriate legal standards in evaluating the evidence.  See Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).

**RECOMMENDATION**

IT IS RECOMMENDED that Addison's complaint be dismissed with prejudice.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 17th day of June, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**